EIDT v. EIDT et al.

(Supreme Court, Appellate Division, First Department. February 10, 1911.)

1. WILLS (§ 441*)—CONSTRUCTION—SURROUNDING CIRCUMSTANCES.

A will dictated by testator to an unskilled scrivener just before undergoing a serious surgical operation should be construed in the light of such circumstances.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 958; Dec. Dig. § 441.*]

2. WILLS (§ 439*)—CONSTRUCTION.

Testator's intent should be given effect, if lawful, though expressed unskillfully.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 955; Dec. Dig. § 439.*]

3. WILLS (§ 614*)—CONSTRUCTION—DEVISE TO WIDOW.

Just before a fatal operation, testator dictated to an unskilled scrivener a will, whereby he left two-thirds of his share in a business to his brother and one-third to his wife; the business to continue for two years before settlement, the wife to draw one-third interest, and his brother two-thirds. He also left to his wife the house and furniture for the rest of her natural life, the interest in the real estate held by him and his brother to be held together for two years; in case of death of the wife within the two years, the one-third interest to go to his mother-in-law. *Held*, that the wife took a life interest only in the home with no attempt on the part of the testator to dispose of the remainder therein.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1393–1416; Dec. Dig. § 614.*]

4. WILLS (§ 558*)—CONSTRUCTION—PROPERTY DISPOSED OF.

Testator left to his brother and widow his interest in a business in the proportion of two-thirds and one-third, and until the estate was settled, which he fixed at about two years, the profits were to be divided in the same proportion; "the business to continue for two years or less before settlement." He further provided that his real estate should be held together for two years or less, and that, "in case of death of my wife within two years or date of settlement, one-third interest to go"

---

to his mother-in-law. *Held,* that the one-third interest in the business was devised to the mother-in-law and not the interest in the real estate.

[Ed. Note.—For other cases, see Wills, Dec. Dig. § 558.*]

5. WILLS (§ 459*)—CONSTRUCTION—INTENT.

The rule permitting moulding of words to ascertain testator's intent does not permit a construction of disposition in a way not reasonably justified by the will.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 978; Dec. Dig. § 459.*]

Scott, J., dissenting.

Appeal from Special Term, New York County.

Action by John C. Eidt against Christine Eidt and others. From an interlocutory order, defendants appeal. Reversed, and judgment directed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, SCOTT, LAUGHLIN, and DOWLING, JJ.

Theodore J. Breitwieser, for appellants.

Carl A. Hansmann, for respondent.

DOWLING, J. Jacob Eidt, Jr., was engaged in the hay and grain business in the city of New York. He had been ill for 10 or 12 days and was taken to Flower Hospital on March 23, 1908, for medical treatment. About 11 o'clock in the evening, while lying on the operating table, and evidently realizing the gravity of the approaching operation, he dictated his will to his brother John C. Eidt, which the latter wrote upon the back of a hospital form; he having no prior experience in the drawing of wills. The writing took about half an hour, and some four hours thereafter the testator died. The instrument drawn under these conditions was as follows:

"New York March 23d 1908.

"I hereby make my last will and testament leaving two thirds of my share in the business Hay & Grain situated at 305 E 45 St. N. Y. City to John C. Eidt and one third of business to my wife Margaret Eidt the business to continue for two years or less before settlement can be made my wife to drawn one third Interest and John C. Eidt to draw two thirds from same I leave to my wife the house and all furnishings at No 326 E. 43 St for the rest of her natural life the Interest in the real estate held by me and my brother John C. Eidt to be held together for two years or less in case of death of my wife within two years or date of settlement one third Interest to go to Mrs. Anna Deibel I appoint my Executors John C. Eidt James A. Sinsabaugh, Margaret Eidt.　　　　　　　Jacob Eidt, Jr.

"J. B. Gregg Curtis, Jr.

"J. Q. Adams.

"Flower Hospital."

This will was duly admitted to probate as a will of real and personal property by the surrogate of New York county June 9, 1908. The testator left him surviving no issue or descendants, but a widow, Margaret Eidt; a mother, Christine Eidt; three brothers, John C. Eidt, Charles W. Eidt, and Christian Eidt; and two sisters, Lena F. Mundt and Julia M. Dauth. The Mrs. Anna Deibel named in the

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

will was testator's mother-in-law. He left the following property, which was valued by the appraiser in the transfer tax proceedings on his estate at the amount stated: (1) A one-half interest in the hay and grain business conducted by him in partnership with his brother at No. 305 East Forty-Fifth street, which interest was valued at $11,913.31; (2) personalty solely owned by him, amounting to $6,924.79, consisting of cash in bank, stocks, bonds, etc.; (3) realty owned solely by him, consisting of the premises 326 East Forty-Third street, New York City, occupied by him as his residence, the equity wherein was $4,000; (4) realty owned by him in common with his brother, consisting of premises 850 and 852 Second avenue, and 240 East Forty-Seventh street, New York City, wherein his equity of one-half was $16,000.

The question presented by this appeal is whether the construction of this will by the learned Court at Special Term was correct that under it the fee of the realty held in common with his brother was devised to his widow.

In endeavoring to construe this will, the circumstances under which it was drawn and executed must be taken into consideration, as well as the absence of experience upon the part of either the testator or the scrivener. Testator was about to undergo a grave operation, from which recovery was problematical. His brother wrote as he dictated, without either knowledge or appreciation of legal forms. As was said in Central Trust Co. v. Egleston, 185 N. Y. 23, 77 N. E. 989:

"Each will must be read and considered with reference to its peculiar provisions and to the circumstances attendant upon its making, and precedents are rarely of avail."

So read, we find here a will which by its express terms disposes absolutely of but one item of decedent's estate—the interest in his business—forming less than one-third of his total estate. This provision for his widow and brother is coupled with a provision to prevent loss to his estate or embarrassment to his partner, by which the business was to be carried on "for two years or less before a settlement can be made"; his brother and widow to draw two-thirds and one-third of the profits, respectively, until the business was wound up and the proceeds divided between them in the same proportion. The other personalty owned by him, aggregating nearly $7,000, it is conceded he did not even make an attempt to dispose of. He leaves the home to his wife for life only, and it is not even claimed that he attempted to dispose of the remainder therein. To say that the words "and in fee" should be inserted after the phrase "for the rest of her natural life," so as to create a devise to the widow absolutely of the real estate held in common with his brother, is not only to do violence to the language used, but to depart from every canon of construction. The clause creating a life interest shows no intention of creating a fee, and to not only attach the former estate to property not disposed of, but to extend it into a fee as to such property, is in effect to write a new will for the testator. He never made an effort to dispose of all his property, even from the point of view of the respondents herein. Out of an estate of $38,838.10, he disposed abso-

lutely of only $11,913.31; he created a life estate in an equity of $4,000; he made no disposition whatever of $6,924.79; and the question now submitted is whether he disposed in any way of the remaining equity of $16,000.

This is not the case which frequently arises of an obvious effort by testator to dispose of all his property, which is in danger of failing for some ambiguity or defect in the language used, nor is it one where the presumption attaches that the testator intended to dispose of all his property. Byrnes v. Baer, 86 N. Y. 210. Nor is there any general purpose indicated to provide liberally for his wife, which calls for a liberal construction in her favor. Moffett v. Elmendorf, 152 N. Y. 475, 46 N. E. 845, 57 Am. St. Rep. 529. Applying the rule that, "in the construction of testamentary disposition, where the language is unskillful or inaccurate, but the intent can be clearly collected from the writing, it is the duty of the court to give effect to that intent, subject only to the proviso that no rule of law is being violated" (Masterson v. Townshend, 123 N. Y. 458, 25 N. E. 928, 10 L. R. A. 816), the only fair construction to be placed upon the will is as follows: The testator left to his brother and widow his interest in the hay and grain business in the proportion of two-thirds and one-third; and until such time as the estate could be settled up, which he fixed at a period of two years or less (he evidently having some idea that two years was about the time required to settle an estate), the profits of the business were to be divided in the same proportion. He left his residence with its furnishings to his widow for life, and made no disposition of the remainder therein. He directed that his interest in the real estate held in common by him and his brother should remain unsold for the same period of time as that during which his interest in the business was to be kept intact—two years or less—to prevent loss to his estate or to his brother through a forced sale; but he made no disposition whatever of his interest in this property. He made no disposition of his residuary estate, consisting of personalty. In case his wife should die before the estate was settled or within two years, her one-third interest in the business was to go to her mother, Mrs. Anna Deibel, for that seems the only fair interpretation to be put on that clause, in which the words "two years or date of settlement" are almost identical with the "two years or less before a settlement can be made," used in the bequest of the one-third interest to his wife. While this result may be unfortunate for the interests of the widow, that arises solely from the terms of the will itself. The rule laid down in Starr v. Starr, 132 N. Y. 154, 30 N. E. 384, that, "in construing wills, the court may transpose, reject, or supply words, so that it will express the intention of the testator," does not extend so far as to allow the court to make a new will for the testator which will dispose of the property in a way not justified by any reasonable construction of the will. Matter of Disney, 118 App. Div. 378, 103 N. Y. Supp. 391; Id., 190 N. Y. 128, 82 N. E. 1093; Patchen v. Patchen, 121 N. Y. 432, 24 N. E. 695; Campbell v. Beaumont, 91 N. Y. 467; Tilden v. Green, 130 N. Y. 29, 28 N. E. 880, 14 L. R. A. 33, 27 Am. St. Rep. 487.

The rule is well summarized in Jarman on Wills, vol. 1 (5th Am. Ed.) 356:

"In the construction of wills, the most unbounded indulgence has been shown to the ignorance, unskillfulness, and negligence of testators; no degree of technical formality, or of grammatical or orthographical error, nor the most perplexing confusion in the collocation of words or sentences, will deter the judicial expositor from diligently entering upon the task of eliciting from the contents of the instrument the intention of the author, the faintest traces of which will be sought out from every part of the will, and the whole carefully weighed together; but if, after every endeavor, he finds himself unable, in regard to any material fact, to penetrate through the obscurity in which the testator has involved his intention, the failure of the intended disposition is the inevitable consequence. Conjecture is not permitted to supply what the testator has failed to indicate; for the law has provided a definite successor in the absence of disposition, and it would be unjust to allow the right of this ascertained object to be superseded by the claim of anyone not pointed out by the testator with equal distinctness."

The situation here presented is that described in Schouler on Wills (1910 Ed.) p. 285:

"But after all the indulgence, all the favorable regard possible, after all the comparison of words and phrases, after the long search by the light of extrinsic testimony to discover in the gift a certain and sensible meaning, the court may still be left in impervious darkness, and the will must fail of effect in consequence."

The judgment appealed from should therefore be reversed, and judgment directed to be entered in accordance with the views hereinbefore set forth, with costs to the appellants to be paid out of the estate.

INGRAHAM, P. J., and McLAUGHLIN, J., concur.

LAUGHLIN, J. (concurring). I concur in the result to which the majority opinion leads, but I reach it on a different theory. I agreed with Mr. Justice DOWLING that no interest in the premises in question, which were owned by the testator and by the plaintiff as tenants in common, was devised to the wife of the testator. I am of opinion, however, that he intended to devise one-third of his interest therein to his mother-in-law in the event that his wife died before the settlement to which he referred, or within the period specified if the settlement was not made within that time, and, since she did not, the mother-in-law takes nothing under the will, and this is of no practical consequence. It is evident, I think, that the testator knew that he was not disposing of all of his property. The fair inference is that, being pressed for time, he intended that the will should only relate to the disposition of that part of his estate which he desired to devise and distribute in a manner different from that provided by the statutes of the state, and that he left his other property, both real and personal, to descend and be distributed as intestate property. Viewed in that light, I am of opinion that he disposed of his interest in the copartnership absolutely by what appears to be, although it is not punctuated, the first clause of the will, for he apparently fully and completely expressed his wishes with respect to the copartnership

property and then proceeded to dispose of other property, viz., an interest in the homestead. Reading and considering the entire will together, there is naturally, I think, a full stop and should be a period between the words employed to dispose of these two property interests, for there is no connection between the property or the disposition thereof. One was copartnership property and the other was not, and one was personalty and given absolutely, and the other was realty in which only a life use was devised. The same is true in a general sense with respect to the homestead "326 E. 43 St.," and the premises in question, and therefore it seems to me the will should be read as if the provisions with respect to the interest in the real estate held by him in common with his brother were separated from the preceding provisions of the will by a period and were in a new sentence. He did not make these provisions for his wife in terms as a substitute for her right of dower, and it may be assumed that he knew that she would still have a dower interest in the premises in question; and as this is not infrequently, although inaccurately, referred to as the wife's third, I think that in the event of the death of his wife before the lapse of two years, or the settlement to which he refers, he intended that her mother should take one-third of his interest in this real estate. His wife had only her mother dependent on her. He doubtless knew that his wife could leave the property she received from his interest in the copartnership to her mother, but that she could not leave her mother her dower interest. He intended, I think, that the premises should be held without division or a sale until the copartnership business was settled, or for two years if not settled within that time, and then if his wife was living he doubtless thought she would take one-third of his interest in the premises in question, outright, and if she should not be living then that interest to go to her mother.

He intended to devise one-third of something to his mother-in-law, and that devise, in my opinion, relates immediately and directly to the premises in question, and I think it relates to nothing else.

SCOTT, J. (dissenting). I am unable to agree that the will in question is so obscure as to leave the court in "impervious darkness" as to the testator's intention respecting his share of the real estate held by himself and his brother John.

It is perfectly clear that he meant to make some disposition of that interest. Otherwise he would not have mentioned it. It is also clear that his predominant idea in making a will was to designate what portion of his property should go to his widow. As to what was not to go to her he was silent, leaving its distribution to be regulated by the law. He mentioned only three items of property; his interest in the business which he gave to his brother and partner and to his wife, his house in which he gave his wife a life interest, and his real estate owned in common with his brother. Unless he meant to dispose of this last property, there is no reason why he should have mentioned it at all, and, unless he meant to give it to his wife, the reference to it was meaningless. I have no doubt at all that what he intended was to give his wife the house for life, and the other real estate abso-

lutely, and this intention would have been expressed beyond doubt if the obviously illiterate scrivener had inserted the conjunction "and" after the gift of a life interest in the house, so that the clause would have read:

"I leave to my wife the house and all furnishings at No 326 East 43 St. for the rest of her natural life *and* the interest in the real estate held by me and my brother John E. Eidt, to be held together for two years or less."

Such an interpolation, in order to effect what seems to have been the obvious intent of the testator, is fully authorized by precedent. Starr v. Starr, 132 N. Y. 154, 158, 30 N. E. 384, and cases cited.

The judgment should be affirmed.