In the Matter of the Estate of ANTONI DZWONIAREK, Deceased.

Surrogate's Court, Richmond County, February 8, 1932.

*Samuel J. Jaeger*, for the administratrix.

*L. W. & A. B. Widdecombe*, for all legatees, except administratrix of the estate of Joseph Dzwoniarek.

*Edward M. Seguine*, special guardian for minor children of Joseph Dzwoniarek.

SMITH, S. It appears from the petition in said proceeding that one Antoni Dzwoniarek *died on May 6, 1913*, leaving a last will and testament *bearing date April 26, 1913*, which was admitted to probate in the Surrogate's Court of the county of Richmond on June 18, 1914; that letters testamentary were granted to Joseph Dzwoniarek, the executor named in said will, and that said executor died intestate on April 8, 1930, and that letters of administration upon his estate were issued to the petitioner, Stefania Dzwoniarek, on April 15, 1930, and that letters of administration with the will annexed on the estate of said Antoni Dzwoniarek were issued to said Stefania Dzwoniarek on March 23, 1931. The widow died on August 17, 1930.

The will of said Antoni Dzwoniarek provides as follows: "*First*, after my lawful debts are paid, I give, devise and bequeath all my real and personal property to my beloved wife, Konstancya Dzwoniarek, and to use the same during her whole life time, and after death all real and personal property of my estate to be disposed of as follows:" The will then provides for general legacies to eight children, and a specific legacy to his son Joseph Dzwoniarek as follows: "*Ninth*, I give and bequeath to my son Joseph Dzwoniarek the grocery and provision business, with all goods and chattels and effects which shall at my death be in or about the place of business at 165 McKeon Street, Stapleton, New York," and said will by the eleventh paragraph thereof disposes of the residuary estate as follows: "*Eleventh*, I give, devise and bequeath to my son Joseph Dzwoniarek his heirs and assigns the residuary, together with all the appurtenances thereunto belonging, to have and to hold the same unto the said Joseph Dzwoniarek, his heirs and assigns forever."

It appears from testimony taken in the proceeding that said will was prepared by a layman, from a paper evidently prepared by the testator and written in Polish, and that the will as prepared was a translation of the document written in Polish. The petition

for the probate of the will sets forth that the amount of personalty left by the decedent (ten days after the will was executed) was of the value of $40, and that he left real estate of the value of $8,000. The general legacies bequeathed by the will amounted to the sum of $4,900. In construing a will prepared by a layman that fact must be borne in mind (*Eidt* v. *Eidt*, 142 App. Div. 733), and from a construction of the document as a whole a finding could be properly made that the legacies were charged upon the land, as the personal estate of the testator was insufficient to pay them, and the deficiency existed when the will was executed, and was so great and so obvious as to preclude any possible inference that the testator did not realize it, or that he may have expected and intended before his death to remove the difficulty. (*Briggs* v. *Carroll*, 117 N. Y. 288, at p. 292.) Such a finding would also be supported by the opinion in *McGoldrick* v. *Bodkin* (140 App. Div. 196), which was a case of insufficient personal property to pay legacies, and which stated: "If, when he made the will and specified the legacies, he knew that he had not sufficient personal property to pay them, he should be deemed to have intended to subject his residuary real estate to the burden of payment, or otherwise he must be deemed to have made his will a mere trick upon the legatees."

Surrogate WINGATE, in his learned and elaborate opinion in *Matter of Lilienthal* (139 Misc. 225), has very ably stated the law relating to legacies charged upon land, and I would hold that the legacies in the present matter were so charged if I could not go further and find that the intention of the testator was that his real property should be converted into money in order that the general legacies should be paid therefrom, for if the legacies were not a charge upon the land, or the land converted to pay the same, one son, the residuary legatee and devisee named in the will, would take all of the testator's estate to the exclusion of the remaining eight brothers and sisters.

To deny the doctrine of equitable conversion as applicable and hold the legacies only a charge on the land would subject the estate to the expense of a proceeding to sell the land to pay the same and destroy the object which the testator had in mind, namely, the payment of the legacies from the proceeds of the sale of his real property. The question of conversion is one of intention. (*Clift* v. *Moses*, 116 N. Y. 144, 157; *Cahill* v. *Russell*, 140 id. 402, 405.)

If the form adopted to express a power of sale is ambiguous or incomplete, the intention nevertheless should prevail, and formal words are not necessary to create a power. (*Cahill* v. *Russell*, 140 N. Y. 402, 405.) "However obscurely in a will the intention

may be expressed, yet if it appears that a power of sale was intended, a sale will be supported." (Sugden [8th ed.], p. 425, § 7.)

Most of the decisions in relation to a conversion are contained in cases where a naked power was given by the testator to sell his real estate, but in such decisions it is uniformly held that where a general scheme of a will requires a conversion then a conversion is presumed (*Recht* v. *Herschman-Bleier-Edelstein Co.*, 139 App. Div. 300; *Delafield* v. *Barlow*, 107 N. Y. 535; *Salisbury* v. *Slade*, 160 id. 278, 289), which last case states the law to be that " This general principle is clearly established by the authorities, that the power of sale need not be express, but may be implied when it is evident from an examination of the entire will that otherwise the testamentary scheme would be defeated."

While it is stated in many of the decisions, and in *Clift* v. *Moses* (116 N. Y. 157), that conversion only arises after an expressed, clear and imperative direction, or after a necessary implication of such expressed direction, still the language of said will in relation to the disposition of testator's estate, after the death of his widow, is so clear, namely, " after death all real and personal property of my estate to be disposed of as follows; " and the bequest of the legacies follows, that a necessary implication of an expressed direction is clearly shown, as otherwise the will need not have mentioned any of testator's other children, as there was only $40 to pay $4,900 in general legacies.

The specific legacy to the son Joseph Dzwoniarek of the grocery and provision business, with all goods, chattels and effects which were at the time of the testator's death in or about said place of business, while in contradiction of the bequest of all personal property to the testator's widow for life, is not necessarily at variance with such clause, for the testator undoubtedly considered his small business no part of the property which he desired should be used by his wife for her life. " There is no prohibition to cutting down or limiting an absolute bequest contained in a testamentary paper by some other provision in it. It is only necessary that the language which attempts to limit such apparent bequest shall show such intent as clearly as did the prior language to make it." (*Matter of Sweeny*, 120 Misc. 663; *Close* v. *Farmers Loan & Trust Co.*, 195 N. Y. 92; *Mee* v. *Gordon*, 187 id. 400.) And the property given by such paragraph became the property of said son from the time of the death of the testator.

The eighth paragraph of said will of the bequest of $2,000 to testator's son Adam, which contained an authorization for the executor to use any part of the amount of the legacy for the support and education of said son, did not create a trust, and as he is now

of full age, any payments made by the executor in his behalf may be deducted from the amount of the legacy given to him by said will.

The administratrix with the will annexed is required to file a bond in the sum of $8,000 in the matter of her administration on the estate of said testator.

Submit decree upon notice. Allowances will be made by the surrogate to the guardian and to the parties, payable to their attorneys and inserted in the decree.