## Drusilla Kinney v. John Kinney.

*Wills: Construction: Widow: Allowances.* A clause in a will giving to the testator's wife so much of his property, real and personal, as is allowed by law to widows in cases where no will is made, or in lieu of personal property allowed her by law, five hundred dollars to be taken by her in case she so elect in lieu of said personal property, is held not to be ambiguous, and it is construed so as to give effect to the apparent intent manifest in it. The "personal property allowed by law," to which the sum of five hundred dollars is made an alternative, refers to the specific property to the value of four hundred and fifty dollars which by law the widow is allowed to select.

*Wills: Ambiguity: Evidence: Probable purposes.* Where there is no ambiguity on the face of a will, it is not admissible by extrinsic evidence to seek to raise an ambiguity, and thereupon on the strength thereof to limit or qualify the construction of the language actually used so as to give effect to some conjectured probable purpose of the testator which he has failed to express. This would be not putting a construction upon the will made by him, but making a new one of quite a different purport.

*Wills: Testator's circumstances: Intent: Construction.* It is not permissible to deduce from the testator's circumstances an intent differing from that which he has plainly expressed in the will.

*Wills: Testator's property: Construction: Intent.* While it may perhaps properly be assumed generally that one making a will has a tolerably correct idea of the condition his estate would be left in if he were immediately taken away, it cannot be conclusively assumed that he anticipates his pecuniary circumstances are afterwards to remain unchanged, and makes his gifts in that expectation.

*Wills: Change in circumstances: Intent.* A will may be, and often is, made when death is not immediately contemplated, and may well make provisions with a view to possible contingencies of change of fortune, and in that view a provision for a small but certain legacy as the alternative to one probably large but possibly worthless, may be a proper dictate of kindness and generosity.

*Wills: Construction: Intent: Language used.* Judicial tribunals cannot inquire into a testator's hopes and expectations as to what his fortune may turn out to be when his will shall take effect, any further than he has seen fit to express them; where he has clearly expressed a wish consistent with the rules of law, they must give it effect; they are not at liberty to surmise that his real wishes were something different.

*Heard April 20.    Decided June 13.*

Case made from St. Clair Circuit.

*B. C. Farrand, C. R. Brown* and *O'B. J. Atkinson,* for Drusilla Kinney.

*Chadwick & Potter* and *Hoyt Post,* for John Kinney.

COOLEY, CH. J:

The controversy in this case is upon the construction of one clause in the will of Arnold Kinney, which is as follows: "I give and bequeath to my wife Drusilla, if she shall survive me, so much of my property, both real and personal, as is allowed by law to widows in cases where no will is made, or in lieu of personal property allowed her by law, I give and bequeath to her five hundred dollars, to be taken by her in case she shall so elect, instead of the said personal property aforesaid." The widow elected to take what she would be allowed by law if there was no will.

The provision made by statute for the widow of an intestate is as follows:

1. An allowance for her support while the estate is in process of settlement.

2. Household furniture and other personal property to be selected by the widow, to the amount in all of four hundred and fifty dollars.

3. When the intestate leaves children, as was the case here, the widow, in addition to the provision already mentioned, takes one-third of the remaining personal estate after debts are paid.

4. The widow has her dower interest in the husband's real estate.

The paragraph of the will upon which the question arises is not expressed in ambiguous terms, and there can be no difficulty in giving effect to the apparent intent manifest in it. But it is claimed on behalf of the heirs that the apparent intent was not the real intent existing in the testator's mind when the will was made. To prove this, resort has not been had to direct testimony, but the condition of the estate is proved, and it is said there springs from this an inference amounting to practical demonstration, that the intention of the testator was not what the language he has employed would indicate.

The fact on which reliance is chiefly placed is, that the personal property of the testator amounted at the time the will was made to twenty-five thousand dollars. The widow, if entitled to one-third of this, would receive something like eight thousand dollars, besides the temporary provision for support, and the four hundred and fifty dollars in specific chattels selected by her. To give her the alternative of selecting between eight thousand dollars and five hundred dollars would be an absurdity of which it is supposed no reasonable man would be guilty, and it is said we must assume that something different was intended. If we are at liberty to infer that by the "personal property allowed her by law" the testator intended only the specific property to the value of four hundred and fifty dollars, which the widow is allowed to select, the difficulty will disappear. Five hundred dollars in cash as the alternative to specific property of the value of four hundred and fifty dollars would afford a choice that might reasonably be presented to any one; and it may fairly be considered a sensible deduction from all the circumstances, when these are brought into the case by proofs, that it was this reasonable alternative which it was the purpose of the testator to present, rather than one manifestly absurd from the great diversity in value of the two things between which the choice was to be made.

But this method of ascertaining the testator's intent takes us away from a consideration of his language, in which he

must be supposed to have carefully expressed his wishes, and invites us to conjecture what probable purpose he had in view which he has failed to express. Whatever may be the probabilities that we shall thereby reach the testator's real intent, it is manifest that this method is not putting a construction upon the will made by him, but it is making a new one of quite a different purport.

There are cases in which, when a man's will is examined in the light afforded by his property and by a knowledge of the persons who were or who may have been the objects of his bounty, some ambiguity may appear which can only be solved by a resort to parol evidence in aid of the construction. Language may be employed which seems to point with more or less directness to two different persons as the intended beneficiary, or a description of property may seem to fit one parcel as well as another. In such cases the testator must be supposed to have had only one of the persons or one of the parcels of property in mind in making the intended gift. And it is always admissible to ascertain which of the two he intended to indicate, by a resort to any evidence which will give us an insight into his purpose. When an ambiguity is not found in the will itself, but is made to appear by extrinsic evidence, a resort to other evidence of a similar character, in order to solve the difficulty, is only pushing a little farther the inquiry by which the existence of an apparent uncertainty has been disclosed. Such ambiguities often appear when the will has been expressed with great care and caution; the difficulty arising from the fact that a name or description of one person or thing, however clearly given in the will, and with a single person or thing only in mind, may be found capable of being applied to others. There is no reason for defeating a gift by will for such an ambiguity that would not apply with equal force to a deed or a bill of sale. Indeed, parol evidence is usually necessary to apply any gift or sale to the person or thing intended.

The circuit judge may have supposed this to be a case

of latent ambiguity; that is, he may have supposed, though the intent appeared to be plain on the face of the will, yet that when it was shown how much property the testator had, it became doubtful whether he intended to give his wife *all* the personal property that would have been allowed her as the widow of an intestate, or only *so much* thereof as would be set off to her in specific chattels of her selection. But this view overlooks the fact that, in order to create any ambiguity at all, it is necessary to modify or overrule the language of the will. The will is no more ambiguous when the extrinsic facts are proved than it was before. In clear and unmistakable language it declares the testator's purpose that his wife shall have "so much" of his property, both real and personal, as is allowed by law to the widows of intestates, with liberty to choose between the personal property and five hundred dollars in money. The words are perfectly clear, and in their meaning are wholly independent of and unaffected by the extrinsic evidence. They give "so much" as the statute sets apart for the widow of an intestate, whether that be much or little, and not some particular portion thereof.

It was said by *Lord Kenyon* in *Hay v. Coventry, 3 T. R., 83, 85,* that "the general rule which is laid down in the books, and on which alone courts can with any safety proceed in the decision of questions of this kind, is to collect the testator's intention from the words which he has used in his will, and not from conjecture." Similar language is found in the following, among other cases: *Stephenson v. Heathcote, 1 Eden, 38,* approved in *Boot v. Blundell, 19 Ves., 494, 521; Miller v. Travers, 8 Bing., 244; Hardwicke v. Douglas, 7 Cl. & Fin., 815; Jackson v. Sill, 11 Johns., 201.* The controversy in *Hensman v. Fryer, Law Rep., 3 Ch. App., 420,* was upon circumstances very similar to those in the present case, and *Lord Chelmsford* denied the right to deduce from the testator's circumstances an intent differing from that which was plainly expressed in the will. But even if we were at liberty to act

KINNEY *v.* KINNEY.

upon conjecture, the little knowledge we have of the facts would afford no reasonable basis for doing so.     The facts relied upon are, that the testator, having some twenty-five thousand dollars of personal property, gives his wife the option to take one-third of it, or the sum of five hundred dollars, which is said to be too absurd to have been really intended.     This argument must assume two things:

1.  That the testator had an accurate knowledge of the condition of his estate; · and

2.  That he did not contemplate as probable, or even possible, any considerable change in his circumstances up to the time of his death.

That one making a will has a tolerably correct idea of the condition his estate would be left in if he were immediately taken away, may perhaps be generally assumed, though the assumption would often be wide of the mark.     But it cannot be taken for a general rule that persons performing this important act anticipate that their pecuniary circumstances are afterwards to remain unchanged, and that they make their gifts in that expectation.

A will, though often made while death is contemplated as a remote event, is to speak from the time the death takes place.     The will made by a rich man may therefore take effect only after he has died poor.     If he was reasonably thoughtful and prudent in making it, it will probably be found that he made provision, while giving away what then promised to be a large fortune, for the possibility that the distribution would be of the mere wreck of a fortune only.     In such a case a gift that when made seemed princely may dwindle into insignificance; and a provision for a small but certain legacy as the alternative to one probably large but possibly worthless, may be a proper dictate of kindness and generosity.

A court can never know that a testator may not have contemplated such a possibility when making a testamentary disposition of his property.     The probabilities rather favor such a view; for the instrument is not to have immediate

effect, and may remain inoperative for many years. But into the testator's hopes or expectations on this score judicial tribunals cannot inquire any farther than he has seen fit to express them. Where he has clearly expressed a wish, consistent with the rules of law, they must give it effect; they are not at liberty to surmise that his real wishes were something different.

In our opinion the conclusion of the probate judge was correct, and it must be affirmed, and that of the circuit court reversed, with costs of that court and this. The order affirming that of the probate court will be remitted to both the lower courts.

The other Justices concurred.