[L. A. Nos. 1121, 1090.   Department One.—December 10, 1903.]

PARKE W. KAUFFMAN et al., Members of San Buena Ventura Lodge, F. and A. M., Appellants and Respondents, v. JACOB K. GRIES, Respondent and Appellant.

ESTATES OF DECEASED PERSONS—CONSTRUCTION OF WILL—CARE OF BURIAL LOT BY MASONIC LODGE—DEVISE TO HUSBAND—PRECATORY WORDS—TRUST.—Where a wife devised land to her husband in fee simple, with an expression of "desire" and "request" that he should convey it to a Masonic lodge, "in such manner and at such times as he may deem best," and that he should out of the rents, issues, and profits of other land devised to him for life invest the sum of one thousand dollars in some satisfactory security and transfer the same to the said lodge, and that such conveyance and transfer should be made in such manner as to impose the obligation upon the lodge to care for her burial lot; and where the will also provided that, in case of the death of her husband before her own death, the land devised to her husband "in fee simple, with the request that

it be conveyed to the Ventura Lodge," was devised to her executors in trust for the same purpose,—the trust so created, taken in connection with the devise to the husband, indicates that the precatory words accompanying the devise to him were not intended to import a trust or charge upon the land in his hands, such as could be enforced in a court of equity.

ID.—DECREE OF DISTRIBUTION—ERRONEOUS JUDGMENT.—There is no warrant in the will for a judgment in favor of the lodge for one thousand dollars against the husband of the testatrix; and where the decree of distribution of her estate distributed the land to the husband, without imposing any charge thereon, and also distributed one thousand dollars to the lodge, under the conditions contemplated by the will, the rights of the lodge are limited by such decree; and a judgment for said sum in favor of its members against the husband must be reversed.

APPEAL from part of a judgment of the Superior Court of Ventura County and from an order denying a new trial, and cross-appeal from another part of said judgment. W. S. Day, Judge, presiding.

The facts are stated in the opinion.

Blackstock & Ewing, and Toland & Andrews, for members of Ventura Lodge.

The will created a trust chargeable against the husband, in equity, to which the decree of distribution is no bar. (*Colton* v. *Colton,* 127 U. S. 300-322; *Griffith* v. *Godey,* 113 U. S. 89; *Olivas* v. *Olivas,* 61 Cal. 382; *Curtis* v. *Schell,* 129 Cal. 208;[1] *Golson* v. *Dunlop,* 73 Cal. 157; *Guerrero* v. *Ballerino,* 48 Cal. 119; *Sohler* v. *Sohler,* 135 Cal. 331; *Aldrich* v. *Barton,* 138 Cal. 220;[2] *Silva* v. *Santos,* 138 Cal. 536.)

Barnes & Selby, for Jacob K. Gries.

The decree of distribution is conclusive of the rights of the parties. (*Goad* v. *Montgomery,* 119 Cal. 552, 553;[3] *Matter of Trust of Trescony,* 119 Cal. 568; *William Hill Co.* v. *Lawler,* 116 Cal. 359; *Jewell* v. *Pierce,* 120 Cal. 79; *McKenzie* v. *Budd,* 125 Cal. 600; *Toland* v. *Earl,* 129 Cal. 148, 152.[4]) The trust, if created, was for a perpetuity, and void. (*Bates* v.

[1] 79 Am. St. Rep. 107.          [3] 63 Am. St. Rep. 145.
[2] 94 Am. St. Rep. 43, and note.          [4] 79 Am. St. Rep. 100.

*Bates,* 134 Mass. 110;[1] note to *Rhymers' Appeal,* 39 Am. Rep. 789.)   The precatory words did not create a trust or charge in equity in this case.   (2 Pomeroy's Equity Jurisprudence, sec. 1014; *Knight* v. *Knight,* 3 Beav. 148; *Orth* v. *Orth,* 145 Ind. 184.[2])

GRAY, C.—This suit was brought by and on behalf of the members of San Buena Ventura Lodge, No. 214, Free and Accepted Masons, to compel the defendant to comply with the terms of the last will and testament of his deceased wife, and to convey to said lodge certain real estate and one thousand dollars in money, in accordance with the terms of said will.   The judgment was in defendant's favor as to the real estate, and plaintiffs' favor as to the thousand dollars.   Both parties appeal.   The plaintiffs' appeal is taken from the portion of the judgment against them, and from an order denying them a new trial, and the defendant's appeal is taken from that portion of the judgment relating to the thousand dollars.

We will dispose of both appeals in one opinion, first considering the appeal of the plaintiffs.

The plaintiffs predicate their rights to the real estate in controversy upon the theory that the will declares a trust in their favor in said real estate.   The will, so far as necessary to be quoted for the purpose of both appeals, is as follows:—

"First, I direct that after my death my remains shall be buried in my burial lot in the Springfield Cemetery in Ventura County, state of California, where are buried my father, mother and children. . . .

"I also give and bequeath and devise to my said husband all that portion of my real property in Ventura County, California, lying on the east side of the Saviers road, and north of the row of gum-trees and more particularly described as follows, to wit: . . . containing 99.58 acres, as shown upon map of my real property made by George C. Power in June, 1895.

"It is my desire and I hereby request my said husband to convey in such manner and at such times as he may deem best, under contract or otherwise, the said above-described 99.58

---

[1] 45 Am. Rep. 305.        [2] 57 Am. St. Rep. 185, 203, and note.

acres of land to Ventura Lodge, No. 214, A. F. & A. M.,
of the town of San Buena Ventura, California, or to trustees
for its use and benefit in such manner as to impose upon said
lodge or the trustees thereof the obligation to properly care
for, protect, and maintain in good order the cemetery lot in
said Springfield Cemetery in which I may be buried. All
the rest, residue, and remainder of the real estate of which
I may die possessed wheresoever situate, I hereby give, be-
queath, and devise to my said husband, Jacob K. Gries, for
life, with remainder over to the persons herein below named,
giving to my said husband for the term of his natural life
the use, possession, rents, issues, and profits of all the said
land with remainder over as follows, to wit:—

"Out of the rents, issues, and profits of the land herein-
before devised to my said husband for life, I request him to
invest the sum of one thousand dollars in some satisfactory
security and transfer the same to the Ventura Lodge, No. 214,
A. F. & A. M., of San Buena Ventura, California, under
a contract with said lodge that so much of the income or
principal as may be necessary shall be used by said lodge
for the proper care, repair, and maintenance of the burial
lot in Springfield Cemetery in which my remains shall be
interred.

"And all of the rest, residue, and remainder of the estate of
which I may die possessed, of whatsoever kind or nature, or
wheresoever situate, I give, bequeath, and devise to my well-
beloved husband, Jacob K. Gries, making him my residuary
legatee herein."

The will goes on to provide that in case of the death of
her husband before her own death, all that portion of her
real estate "herein specifically devised to my husband in fee
simple with the request that it be conveyed to the Ventura
Lodge," is devised to the executors of her will "in trust,
however, for the following purposes, to wit: As soon after
my decease as practicable, the said executors as such trustees
shall convey said real property to said lodge under a con-
tract from said lodge to carry out my wishes as hereinbefore
expressed regarding the care of my burial lot in said Spring-
field Cemetery; and in the event that such contract cannot
be legally made, then the said executors as such trustees

shall have full power of sale and disposition of said real estate are hereby directed to sell the same, and the proceeds arising from the sale of said real estate shall be used by my executors as such trustees for the same purpose as said real estate was intended to be used as hereinbefore expressed.''

We are of opinion that it was the firm desire of the maker of this will that her burial lot should be kept in repair. But we are equally well satisfied that it was not her purpose to bind her husband to that object in such a way that the trust and confidence which she reposed in him could be enforced in a court of equity. If she outlived her husband, it was her purpose to charge upon her executors and her estate an enforceable trust for the care of her burial lot. This is plain from the language used in that connection. To her executors the devise was ''in trust, however, for the following purposes,'' etc. To her husband the devise is referred to by her as ''all that portion of my real estate herein specifically devised to my said husband in fee simple with the request,'' etc. She did not mean the same thing in both these expressions. (*Williams* v. *Williams*, 2 L. R. Ch. Div. 12.) In the one instance she determined that her grave should be cared for as a matter of business; in the other she wanted all this to be left (with a mere suggestion) to those sentiments which usually remain with the survivor of a happy matrimonial union. She doubtless thought that in the case of her husband surviving her she would take the chances of a neglected grave rather than attempt to bind him by the language of her will to do that which she would naturally regard as his duty without being so bound.

''The cardinal rule for the construction of all wills is to ascertain the intention of the testator; and this intention is to be ascertained from the words of his will, taking into view when necessary or appropriate the circumstances under which it was made.'' (*Estate of Marti,* 132 Cal. 666; Civ. Code, sec. 1318.)

It appears from the early decisions in England that any and every precatory word was laid hold of to create a trust, but the modern cases in that country and the better-considered cases in America have gone the other way, and the rule in California has been laid down that the ordinary and

natural import of the words used will be followed "unless
a clear intention to use them in another sense can be col-
lected and that other can be ascertained." (*Estate of Marti,*
132 Cal. 666; Civ. Code, sec. 1324; *Shaw* v. *Lawless,* 5 Clark
& F. 129; *Williams* v. *Williams,* 2 L. R. Ch. Div. 12; *Pen-
nock's Estate,* 20 Pa. St. 268;[1] *Hess* v. *Singler,* 114 Mass.
56.) In Story's Equity Jurisprudence (vol. 2, sec. 1069),
Judge Story says: "The doctrine of thus construing ex-
pressions of recommendation, confidence, hope, wish, and de-
sire into positive peremptory commands is not a little difficult
to be maintained upon sound principles of interpretation of
the actual intention of a testator. It can scarcely be pre-
sumed that every testator should not clearly understand the
difference between such expressions and words of positive
direction and command; and that in using the one and omit-
ting the other he should not have a determinate end in view.
It will be agreed on all sides that where the intention of the
testator is to leave the whole subject as a pure matter of
discretion to the good will and pleasure of the party enjoying
his confidence and favor, and where his expressions of desire
are intended as mere moral suggestions to excite and aid
that discretion, but not absolutely to control or govern it,
there the language cannot and ought not to be held to create
a trust. Now, words of recommendation and other words
precatory in their nature imply that very discretion as contra-
distinguished from peremptory orders, and therefore ought to
be so construed unless a different sense is irresistibly forced
upon them by the context. Accordingly, in more modern
times a strong disposition has been indicated not to extend
this doctrine of recommendatory trusts; but, as far as the
authorities will allow, to give to the words of wills their
natural and ordinary sense, unless it is clear that they are
designed to be used in a peremptory sense."

According to the ordinary use of the English language,
the words "desire" and "request" do not import a trust or
charge. (*Estate of Marti,* 132 Cal. 666.) And there is
nothing in the rest of the will to indicate that they were
used in any other than their ordinary sense; but, as we have
already seen, there is an argument that they should be

[1] 59 Am. Dec. 718.

understood in their usual sense to be found in those portions of the will which contain apt language to create a trust that might be enforced in the courts. (*Williams* v. *Williams,* 2 L. R. Ch. Div. 12.)

The above and foregoing is, perhaps, only one of several reasons why the judgment of the lower court as to the real estate should be affirmed; but as it seems to be decisive of that branch of the case, even if we were to admit the correctness of plaintiffs' other contentions, we deem it unnecessary to discuss the other points urged in the brief. We are of opinion that the precatory words of the will, interpreted by the light of all the rest of the will, do not constitute a trust that should be enforced in a court of equity. It may properly be remarked that the final decree of distribution in the matter of the estate of the deceased wife awarded the real property in dispute absolutely to defendant.

As to defendant's appeal from the part of the judgment to the effect that plaintiffs recover of and from him the sum of one thousand dollars, of course there is no warrant in the will or elsewhere for an unconditional money judgment like that. This will be readily understood from a reading of the portion of the will relating to the thousand dollars above quoted. There is nothing in the will even suggesting that the lodge shall have a thousand dollars in any way otherwise than under a contract that so much of the income and principal as may be necessary shall be used for the care, repair, and maintenance of the burial lot of deceased.

As appears from a decree of distribution entered in the superior court of Ventura County, in the matter of the estate of Mary Selina Gries, a copy of which is attached to the complaint as an exhibit, the thousand dollars referred to was ordered distributed to "Ventura Lodge, No. 214," etc., under the conditions and as provided in the will. And as this was a matter altogether within the jurisdiction of the court making that decree (*Toland* v. *Earl,* 129 Cal. 148[1]), and the decree seems to give all that could be reasonably asked under the will in reference to this one thousand dollars, we think the lodge will have to content itself with what it was given in that decree.

[1] 79 Am. St. Rep. 100.

We advise that the judgment, so far as it relates to the real estate and the order denying plaintiffs a new trial, be affirmed, and that the money judgment for a thousand dollars and costs against defendant and in favor of plaintiffs be reversed.

Cooper, C., and Smith, C., concurred.

For the reasons given in the foregoing opinion the judgment, so far as it relates to the real estate and the order denying plaintiffs a new trial, is affirmed, and the judgment for a thousand dollars and costs against defendant and in favor of plaintiffs is reversed.

Angellotti, J., Shaw, J., Van Dyke, J.