CATHARINE FAUBER, APPELLANT, V. HARRISON KEIM, APPELLEE.

FILED OCTOBER 9, 1909.  No. 15,471.

1. **Wills: Bequest: Charge on Realty.** A provision in a will that the amount of a bequest to testator's daughter shall remain in the "home place," with interest payable annually, in the event of her being married at the time of testator's death, *held* to be a charge upon the realty described, though further provision was made for the sale of the property and for payment of the legacy, if the legatee should become a widow.

2. ———: **Construction.** In giving effect to a bequest the entire will should be examined to ascertain the intention of the testator.

3. ———: **Legatee: Acceptance of Land: Liability.** A legatee by exercising an option to take testator's land at its appraised value under the will, *held* not to have obligated himself to pay other legatees more than the amount of the appraisement.

REHEARING of case reported in 84 Neb. 167. *Reversed.*

ROSE, J.

Plaintiff commenced this suit in the district court for Thayer county to establish a lien on 160 acres of defendant's land in Thayer county for the amount of a legacy under her father's will, and to require defendant, who took the land under it, to account to her for her share of the estate. Joseph Keim, the father of both plaintiff and defendant, formerly owned the property, and disposed of it by a will containing the following provisions:

"(1) I give and bequeath to my beloved wife, Mary Keim, the sum of $200 in money and all personal property which she is entitled to under the laws of the state of Nebraska and the use of two rooms, of her own choosing, in my dwelling house, so long as she shall occupy the same, and the interest on the sum of $3,000 during her natural life. I direct that my executors hereinafter named shall leave said sum in my home place, when they shall sell the same, and the same shall remain a lien thereon and the purchaser thereof shall annually pay to

my said wife the interest thereof at the rate of seven per cent. per annum during her natural life.

"(2) I give and bequeath to each of my children, as follows: To my son, William Keim, the sum of $254; to my son, Jacob Keim, the sum of $654; to my son, Harrison Keim, the sum of $200; to my daughter, Mary Bates, the sum of $404; to my daughter, Annie Hay, the sum of $522; to my daughter, Eliza Bender, the sum of $340.

"(3) I give and bequeath to my daughters, Catharine Fauber and Cerilla Bender, as follows: To my daughter, Catharine Fauber, the sum of $1,817, and to my daughter, Cerilla Bender, the sum of $373, upon the following conditions, however: In case either or both of them are married at my death the aforesaid sums are to remain in my home place and be a lien thereon, and the interest thereon to be paid annually to them, according to their respective shares; but in case either or both of them become widows, my executors are to collect said money and pay it to them, according to their respective shares; but in case the husbands of either or both of them survive them, said sum or sums is to be paid to their heirs.

"4. I direct that my executors have my home place appraised by six disinterested freeholders to be appointed by the county court of Thayer county, who shall appraise the same and after the same is so appraised my son, Harrison, is to have the refusal thereof at the appraised value, and in case he does not elect to take it, then my son Jacob is to have the refusal; and in case he does not elect to take it, then my son William is to have the refusal thereof; and in case he does not so elect, then my executors are to sell the same at either public or private sale as they shall deem to the best interest of my estate, and execute a deed to the purchaser thereof, whoever the same may be.

"5. I further direct my executors to sell all my estate both real and personal and pay my debts and the aforesaid legacies and in case there is a surplus, after the payment of the debts and the aforesaid legacies, the same shall be equally divided between my children subject,

however, to the same conditions and restrictions as to Catharine Fauber and Cerilla Bender."

Among other things, it is disclosed by the record that Joseph Keim died in June, 1888, and that his will was probated in July following. His widow, Mary Keim, died in January, 1903. At the time of testator's death plaintiff was a married woman, and her husband is still living. The "home place" mentioned in the will is the land in controversy. In the manner described by testator it was appraised at $5,000 and accepted by defendant. When the will was executed, October 17, 1887, it was incumbered by a mortgage for $3,300. In the answer it is alleged, in substance, that the estate of Joseph Keim had been settled, and that after payment of the debts there remained only enough to pay 20 per cent. of the legacies; that plaintiff had received the interest on 20 per cent. of the amount bequeathed to her; that 20 per cent. of the other legacies had been paid to the legatees entitled thereto, and that the executors had been discharged. Upon a trial in the district court the action was dismissed, and plaintiff appeals.

One of plaintiff's objections to the judgment is that it deprives her of a lien on defendant's land for the amount of her legacy under the terms of her father's will. She has asserted this right in her pleadings, and defendant in his answer has denied that "she has any lien or claim against the real estate described in the petition." On the record presented the district court had jurisdiction to determine the issue thus raised. Since she is not a widow, she can only collect under the will at present the interest on her legacy. If it is not a lien, defendant may sell the land without regard to her interests. The dismissal of her suit was an adjudication that she was not entitled to a lien to secure the amount of the bequest, or the interest thereon. The decision on this point must be controlled by the intention of testator as disclosed by his entire will. The bequest to plaintiff contains these words: "I give and bequeath to my daughters, Catharine Fauber and

Cerilla Bender, as follows: To my daughter, Catharine Fauber, the sum of $1,817, and to my daughter, Cerilla Bender, the sum of $373, upon the following conditions, however: In case either or both of them are married at my death the aforesaid sums are to remain in my home place and be a lien thereon, and the interest thereon to be paid annually to them, according to their respective shares; but in case either or both of them become widows, my executors are to collect said money and pay it to them, according to their respective shares; but in case the husbands of either or both of them survive them, said sum or sums is to be paid to their heirs." The conditions on which she was entitled to a lien under the specific terms quoted were present. These terms were not annulled by other legacies or by provisions relating to the sale of the land or by any other direction of testator. It follows that there was error in denying to plaintiff her right to a lien, since defendant concedes the estate was sufficient to allow her 20 per cent. of the amount bequeathed to her, and that he paid her interest on that basis.

Another point argued by plaintiff relates to the amount of defendant's liability. As already shown, the farm was appraised in the manner described in the will at $5,000, and defendant accepted it under the appraisement pursuant to the option authorizing him to do so. The land was incumbered by mortgage to the extent of $3,300. The contention is that defendant took the realty subject to the mortgage and to the legacies in favor of plaintiff, Cerilla Bender, and testator's widow is liable for the full amount of the items named and must account to plaintiff accordingly. On the other hand, defendant insists that by exercising his option to take the land at its appraised value he only obligated himself to pay the amount of the appraisement. The entire will must also be considered in determining this question. The provisions relating to liens, to the appraisement, to the payment of the debts, to the option permitting one of the sons to take the land at its appraised value, and to its sale in the event of the fail-

ure of any of the sons to exercise the option indicate there was no intention on the part of testator to require payment of more than the amount of the appraisement as a condition of acquiring title. The bequests and the amount of the mortgage greatly exceeded the appraised value of the land. No one could be induced to accept it on conditions requiring him to pay incumbrances and legacies greatly in excess of its value. Such a construction, if understood, would prevent a sale, and to that extent defeat the purpose of testator. It is not warranted by the language of the instrument. By taking the land under the will defendant did not bind himself to pay more than its appraised value. In his formal acceptance, however, he did insert the words, subject to all incumbrances, but did not thereby obligate himself to pay for the farm more than its value, as appraised under the specific terms of the will, or to create and distribute a greater estate than that possessed by his father at the time of his death.

For the error already pointed out, the cause must be remanded for further proceedings, but in the present condition of the pleadings and proofs it is deemed inadvisable to discuss other questions argued.

REVERSED.