EMMA L. WATSON, APPELLEE, v. WILBERFORCE W. RILEY
ET AL., APPELLANTS.

FILED JULY 10, 1917.   No. 19307.

1. **Wills: CONSTRUCTION: OPTION.** An option to purchase property of
   the estate, whether it be at an appraised value or at a price named
   or agreed upon, may be created by will.

2. ———: ———: ———: ACCEPTANCE. A will, bequeathing to one
   of the four children one-fourth of the estate for life, with remainder
   over to her children, and to each of the other children one-fourth
   of the estate, concluded with a provision as follows: "It is my
   will that the said Emma L. Watson (one of the children) shall
   have the right to take the following described land (here follows
   description) for the sum of $50 per acre, the said Emma L. Riley
   (Watson) shall be allowed on the said purchase price of said land
   the sum of $12.50 per acre or if her bequest shall amount to more
   than the sum of $12.50 per acre then she shall be allowed upon the
   said sum of $50 per acre the sum of her entire inheritance to be
   deducted from said sum of $50 per acre." A codicil contained the
   following words: "I give and bequeath to my daughter, Emma Wat-
   son, the strip (describing a narrow strip) in addition to and as
   a part of the farm bequeathed to her in the said will, and on the
   same terms and conditions." Emma accepted the devise and of-
   fers to pay to the other heirs the $50 per acre as provided in the
   will. This offer is declined by the other heirs. Emma brings suit
   to quiet title. *Held*, that by the acceptance and offer the title to
   the land vested in Emma, subject to the amount then due from her
   to the estate.

APPEAL from the district court for Pierce county: AN-
SON A. WELCH, JUDGE. *Affirmed.*

*Kelsey & Rice, O. S. Spillman* and *Dowling & Warner,*
for appellants.

*M. H. Leamy, contra.*

CORNISH, J.

Margaret Riley, by her will made February 20, 1906, be-
queathed to Mary, one of her four children, "one fourth
of all the property, both real and personal, of which I may
die possessed;" to Wilberforce, the same; to Alice, the

same for life, with remainder over to her children; to Emma, the same. Then followed the words: "It is my will that the said Emma L. Watson (the child above mentioned) shall have the right to take the following described land (here follows description, 160 acres) for the sum of $50 per acre, the said Emma L. Riley (Watson) shall be allowed on the said purchase price of said land the sum of $12.50 per acre or if her bequest shall amount to more than the sum of $12.50 per acre then she shall be allowed upon the said sum of $50 per acre the sum of her entire inheritance to be deducted from said sum of $50 per acre." Subsequently she made a codicil to her will, as follows: "I give and bequeath to my daughter, Emma Watson, the strip (describing a narrow strip) in addition to and as a part of the farm bequeathed to her in the said will, and on the same terms and conditions."

Although, at the time the will was made, $50 per acre may not have been far from the value of the land, it is now worth about $150 per acre. The controversy, an action to quiet title, is over Emma's claim of right to the land at $50 per acre, under the will. The other heirs, defendants, contend that the will shows the primary intent of the testator to be an equal division of her property; that, if she had intended to limit the price of the land, she would have devised it to plaintiff and provided that she pay a certain amount to each of the other children; that, if Emma's claim is right, then each is not getting one-fourth of the property, in fact, according to the terms of the will, but one-fourth of a fictitious or arbitrary estate; that the figures given in the last paragraph are illustrative of or a formula for distribution only, and were not intended to cut down or limit the estate which she was giving to the other three children; that the will had two main purposes, one, an equal division, and the other, to give Emma an opportunity to take the home farm; and that the last clause of the will, above quoted, is ambiguous.

We are of opinion that this contention is erroneous. In the first place, it is impossible to say that the primary ob-

ject of the will was an equal division of the property amongst the children. Why did she limit Alice's share to an estate for life? People make wills to avoid equal division. The law does that without a will. The main object of a will is likely to be a purpose that, to strangers, may seem unfair. Mrs. Riley's moving purpose may have been to secure the homestead for Emma, at $50 per acre. Quite likely it was. That is the last clause in her will. Again, the argument proves too much. It renders nugatory this last clause, for, if the property is to be divided according to its value, that can only be determined by its highest selling value, and Emma has no preference over anybody else.

The argument that, if the testator wished to prefer Emma, she would have devised the land to her, charged with the portions going to the others, is unsound in this: Such was not her will. In such case, Emma *must* take or the will fails. She wished rather to give Emma the option to take, and expressed her wish in language clear enough. Of course, she had the right to prefer Emma if she wished. The defendants argue that at the time she wrote the will she considered $50 per acre a fair estimate of the land's value. Let us suppose that is true. Then her will is consistent throughout. But, it may be said, she was mistaken, or did not anticipate a subsequent raise in price. Perhaps so. Prices might have gone down.

Is it still insisted that, if she had known, she would have had it otherwise, in order to accomplish an equal division? Well, if so, we will give you the short answer, advised by Chancellor Kent in such cases: *Voluit sed non dixit.* (She wished but said nothing.) Margaret Riley's case may have been, probably was, a very common one. She regarded her children equally, and would so divide her property; but yet she was attached to the old homestead, which bore the family name, did not wish it divided, or to go into the hands of strangers, and for some reason wished Emma to preserve it for family uses. So she gave Emma that privilege, honestly valued the land at $50 per acre, and in

101 Neb.—33

that way made an equal division. Such cases are numerous.

The courts unanimously and without disagreement have held according to the rule stated in 40 Cyc. 2000: "An option to purchase property of the estate, whether it be at an appraised value or at a price named or agreed upon, may be created by will." The rule is recognized in *Fauber v. Keim*, 85 Neb. 217. Deny the testator that power, and he could not make his real will. He may have the best of reasons. One piece of property—a store or a farm—may be adapted to the use of a particular child. He wishes to hold it intact and to avoid controversy over its value; and, more important still, he may desire to make a preference. His valuation must go in the distribution, and, if on his valuation the distribution is equal, then it is so in law, and there is no fictitious estate or repugnancy in the will. The writer knows of one will where no doubt the testator, dividing his property equally, thought his valuation on the homestead, bequeathed to one, might be from $5,000 to $10,000 too low. It turned out to be $5,000 too high. Testators know that conditions and their valuations will change, but that is their business. It generally happens. We know of no case, however, where the courts have permitted changed valuations to affect the will. The reason is that the intent must be drawn from the clear language of the will. Results, full of mischief, will follow when courts, not testators, make the will.

*Johnson v. Johnson*, 81½ Pa. St. 257, was a case very like the one in hand. There the testator, as here, divided his real property equally among his 12 children. He valued it at $6,000, and gave three sons the privilege of taking it at that price. The real estate became worth from $50,000 to $70,000. The court, without dissent, sustained the provisions of the will.

In the case in hand, the codicil to the will should remove any doubt about its proper construction. There Mrs. Riley herself interprets the will as if it bequeathed the land to Emma upon certain terms and conditions. The real cause

of the controversy in this case grows out of the increased value of the land since the time when the will was made. If the land value had remained at $50 per acre, or gone below that amount, there would have been no dispute. Once we fully and fairly recognize the right of the testator to fix the valuation of his property, bequeathed for distribution, then the will presents no difficulty of construction. Strictly speaking, the present value of the land is a matter with which the court has absolutely nothing to do, any more than it has to do with evidence bearing upon the testator's affection for the several children. When the language is clear, the will speaks for itself. There is no ambiguity in the will.

The judgment of the trial court should be affirmed. Emma having elected to purchase the land at $50 per acre, title should be quieted in her, subject to the amounts due the other children, in accordance with the provisions of the will.

AFFIRMED.

DEAN, J., concurring separately.

An option to buy real or personal property at a given price is everywhere recognized as a property right. It is so recognized in the law that pertains to the interpretation of wills. Mrs. Riley in express and coldly specific terms devised to her daughter Emma an option to purchase the home place at the price of $50 an acre. Her will also provides that Emma's distributive share in the land, $12.50 an acre, "shall be allowed on the said purchase price of said land." The language of the codicil, as pointed out in the main opinion, seems to emphasize the specific intent of Mrs. Riley with respect to the disposition that she wanted to make of her home place. The testatrix might have provided that Emma's option to purchase should be based on an agreement as to price, or upon an appraised value of the land at the time the will became effective. But it is sufficient answer that she did not do so. She named the price. The will does not appear to be ambiguous, and

we should not declare it to be so upon slight pretext. As said by Chief Justice Cooley in *Kinney v. Kinney,* 34 Mich. 250:

"Where there is no ambiguity on the face of a will, it is not admissible by extrinsic evidence to seek to raise an ambiguity, and thereupon on the strength thereof to limit or qualify the construction of the language actually used, so as to give effect to some conjectured probable purpose of the testator which he has failed to express. This would be not putting a construction upon the will made by him, but making a new one of quite a different purport. * * * Judicial tribunals cannot inquire into a testator's hopes and expectations as to what his fortune may turn out to be when his will shall take effect, any further than he has seen fit to express them; where he has clearly expressed a wish consistent with the rules of law, they must give it effect; they are not at liberty to surmise that his real wishes were something different."

Nothing can be more clear than the language of Judge Cooley on this point. The rule in the *Kinney* case must be adhered to, if men and women are to be left free to make their own wills. It is elementary that, where there is an apparent conflict in the language of a will having to do with both general and specific devises, the general devise yields to the specific. The rule is the same where a will, or even a contract, has to do with a general intent and a particular or specific intent. In such case the specific intent controls. In the present case it is argued by defendants that, if it is held that the will discloses two conflicting intents, namely, an intent to divide all of the property equally among the four children and an intent to give to Emma an option to buy the home place at $50 an acre, the intent for an equal division controls. The question, then, is squarely presented as to which is the controlling intent or paramount purpose that is disclosed by the language of the will. Clearly, if there is such conflict, the intent of the testatrix to give to Emma the option to purchase controls, because the language of the will pertaining thereto

is specific as to person, as to property, and as to price. In
this respect all is distinct, all is clearly pointed out. It
seems to be the uppermost, the controlling, thought of
Mrs. Riley, and appears perhaps to be the main reason
why the will was at all written. The clause of the will de-
vising to Emma the option to purchase the farm, and the
codicil which gave to Emma the strip of land that formed
an essential part of the farm, "in addition to and as a part
of the farm bequeathed to her in the said will, and on the
same terms and conditions," are the sole and only portions
of the will that point out and specify and distinguish any
portion of the estate from the general mass of the estate.
This seems to answer the contention that the will of Mrs.
Riley gives expression to conflicting intentions with re-
spect to the disposal of her property. The will does not
seem to present intentions that are in substantial conflict,
when viewed in the light of generally accepted rules of
construction.

The specific devise is favored by our statute for certain
purposes. Section 1318, Rev. St. 1913, provides: "The es-
tate real or personal, given by will to any devisees or
legatees, shall be held liable to the payment of the debts,
expenses of administration, and family expenses, in pro-
portion to the amount of the several devises or legacies, ex-
cept that specific devises and legacies, and the persons to
whom they shall be made, may be exempted, if it shall ap-
.pear to the court necessary in order to carry into effect the
intention of the testator, if there shall be other sufficient
estate."

*Ogilvie v. Ogilvie*, 21 Quebec Sup. Ct. 130, holds: "The
fact that the estate is much larger at the date of the tes-
tator's death than it was when the will was made is an ex-
traneous circumstance which cannot be taken into account
by the court in the interpretation of a will, so as to change
its meaning from that fairly deducible from the contents
of the entire instrument itself."

Will any one deny the validity of a clause in a will that
places a valuation upon property for purposes of distribu-

·tion? Will it be denied that an option to purchase prop·
erty on terms and at a price specified in a will is not the
subject of lawful testamentary disposition? The main
opinion seems fairly to have gathered from the will of Mrs.
Riley her intent with respect to the disposition that she
wanted to make of her property. With this done, the duty
of the court is accomplished. Where the language of the
will is plain, it is not within the province of the court to
go outside of the will to discover intent. Death will have
an added terror when the judge begins to substitute his
will for the will of the testator.

SEDGWICK, J., dissenting.

The office of the court in such case is to determine the
meaning of the will; that is, the true intent of the testa-
trix. The case of *Fauber v. Keim*, 85 Neb. 217, cited in
the majority opinion, also depended upon the intention of
the testator, and it was said: "The decision on this point
must be controlled by the intention of testator as disclosed
by his entire will." This is the only respect in which that
case is similar to the one at bar, and I must suppose,
that it was cited for that purpose, as this is the only
suggestion in the majority opinion that we should ascer-
tain the controlling desire and intention of the testa-
trix from the consideration of the entire will. In con-
sidering the will for that purpose, we must also con-
sider the conditions under which it was executed and the
surrounding circumstances. "Every will should be inter·
preted, as far as possible, from the standpoint apparently
occupied by the testator; and attendant circumstances,
such as the condition of his family and the amount and
character of his property, may and ought to be taken into
consideration, as part of the *res gestæ*, where the language
is not plain nor the meaning obvious." 1 Schouler, Wills
(5th ed.) sec. 466. The case of *Johnson v. Johnson*, 81½
Pa. St. 257, is also cited; but it appears to be fundamen-
tally different from the case at bar. In that case the testa-
tor estimated the value of his real estate and specifically
bequeathed that much money to his children, "to share

like and like (naming the children) each $500;" that is, he willed to each of his children $500 in money, and the will did not purport to give the land to any one except those particularly specified, to whom the court gave the land. The majority opinion says: "Strictly speaking, the present value of the land is a matter with which the court has absolutely nothing to do, any more than it has to do with evidence bearing upon the testator's affection for the several children." This seems to be an unusual statement, since all of the authorities agree, as above suggested, that in determining the meaning of a doubtful will the court must take into consideration the "evidence bearing upon the testator's affection for the several children." It may well be conceded that in like manner the court should take into consideration the present value of the land. The land, and its condition, and its value were circumstances to be considered, not only its supposed salable value at that time, but its potential value, and evidence that it increased in value very rapidly is evidence of its potential value at the time of the making of the will, a matter which the testator was at liberty to take into consideration, or a substantive fact that the testator might at the time have overlooked And so the present value of the land becomes an important circumstance.

Of course, where there is no ambiguity on the face of the will, extrinsic evidence is not proper to raise an ambiguity. The question in this case is whether there is an ambiguity on the face of the will; if not an ambiguity, an inconsistency. That depends upon the language of the will and the facts relating to the property which was the subject of the will. If the existing facts relating to the property which was the subject of the will show an ambiguity or inconsistency in the will, it seems to be proper to consider those facts and determine whether or not there is such an ambiguity or inconsistency that both of the supposed wishes of the testator cannot be enforced. If there is, then we must enforce the predominant and controlling one. The fact that the land has increased in value since

the will was made cannot change the meaning of the will from that "fairly deducible from the contents as a whole;" but "the meaning fairly deducible from the contents of the whole instrument" is the very question we are discussing. If the will was perfectly plain in those respects, and stated that Emma should take the property at the value of $8,-000, then the fact that the property was altogether worth $24,000, instead of $8,000, would make no difference. Shall Emma have seven times as much as any of the others? Was that the intention of this will taken altogether? This land was the substance of the property willed. The personal property was of so little value that its consideration will not affect the result. There is no doubt but the desire and intention of the testatrix was to give each one of these four children one-fourth of all of her property of which she might die possessed. This she has expressly and explicitly done in the will. After having done this, she expresses a wish that her daughter Emma shall be allowed the right to take the farm at $50 an acre, which she evidently supposed was its value at the time. If the will had then become effective, it would have accomplished the desire of the testatrix, and would have contained no inconsistency; but it did not become effective until several years later, and then that each of these children should have one-fourth of the property of which she died possessed, and that Emma should have the farm at $50 an acre, was impossible. Feeling confident, as she did, that $50 an acre was at that time the real value of the land, the expression of her wish that Emma should have it at $50 an acre was equivalent to saying that she should have it at its real value, so far as the effect upon the devisees in general was concerned. There is, of course, no doubt that the testatrix might create by will "an option to purchase property of the estate, whether it be at an appraised value or at a price named or agreed upon." It was wholly unnecessary to cite authorities and discuss this proposition at length. It will also be conceded that the testatrix in this case used language which amounts to an attempt to so create an option which would without

hesitation be enforced, if that could be done without doing violence to the principal purposes of the will.

Whether the two provisions of the will under consideration are inconsistent and incapable of enforcement as literally stated in the will is not much discussed in the majority opinion. The second paragraph of the syllabus recites some of the facts quite at length, and determines arbitrarily upon the recited facts that Emma must have the bulk of this property; but that paragraph of the syllabus does not clearly disclose any proposition of law upon which it is so determined, and I do not clearly understand what the view of the majority is upon the vital proposition of law in this case. The thought that there is an inconsistency in the will was evidently in the mind of the writer of the opinion when he used this language: "She regarded her children equally, and would so divide her property; but yet she was attached to the old homestead, which bore the family name, did not wish it divided, or to go into the hands of strangers, and for some reason wished Emma to preserve it for family uses." Here it is assumed that she would have divided the property equally if she could, and at the same time have the property preserved for family uses; whereas, by the express language of the will, she did divide the property equally, and did give each of the four children one-fourth thereof as it might be at the time of her decease, and only expresses a wish that Emma might take the land at what she supposed at the time of making the will was its real value. The opinion assumes that the wish to preserve the land for family uses was the principal purpose of making the will, and says: "People make wills to avoid equal division. The law does that without a will." But there is a legal presumption, when there are no circumstances to indicate the contrary, that the testator desired an equal distribution of his property, and "in case of doubt a construction of the will, as to property, which conforms most clearly to the general statutes of descent and distribution should prevail." 1 Schouler, Wills (5th ed.) sec. 479. The opinion asks the question, "Why did

she limit Alice's share to an estate for life?" This may have been a leading reason for making the will, but it does not make the division of the property unequal. She divided the property into four equal shares, and gives a share to each of her children *per stirpes*. The fact that she desires that Alice's share shall be preserved for Alice's children throws no light upon the question here considered.

It is said in the opinion that "the codicil to the will should remove any doubt about its proper construction." This is because "Mrs. Riley herself interprets the will as if it bequeathed the land to Emma upon certain terms and conditions." The codicil provides that the easement of a passageway to the land shall go with the land upon *"the same terms and conditions."* The sole purpose of this codicil was to attach the passageway to the land as a part thereof, and the fact that the testatrix took this (probably unnecessary) precaution can be of no assistance in construing the will. This codicil amounts to no more than to say that, if the conditions are such that she gets the land, she shall have the right of way to the land upon the same terms. There is no evidence in the record indicating any motive or reason for any unequal division of the property. By the majority opinion Emma gets about seven times as much property of the testatrix as does any other of the four children. I cannot see how this will can be construed to express such an intention of the testatrix.

MORRISSEY, C. J., concurs in this dissent.

HAMER, J., dissenting.

The testatrix was the owner of a certain small amount of personal property at the date of making the will, February 20, 1906, and she also owned a quarter section of land, and a strip of land two rods wide, used as a private road and running to the farm. There were 160 acres in the quarter section, and two acres in the strip, making a total of 162 acres. She had four children, Mary Millett, Wilberforce W. Riley, Alice Dean, and Emma L. Riley

(Watson).   At the time of her decease the personal property, after the payment of a few small debts, amounted in value to only about $1,000.  The real estate was then worth $150 an acre, according to the evidence, and amounted to $24,300.  As there is no controversy about the $1,000 of personal property, that need not be considered in this discussion.   The testatrix was apparently desirous at the time of making the will of dividing all her property evenly between her children, giving one-fourth to each, but at the same time she desired that in the division Emma L. Riley (Watson) should be allowed, at her election, to take the farm, instead of her one-fourth in money.   Emma L. Riley (Watson) elected to take the farm, and so notified the other children in writing.  The evidence that the testatrix desired to evenly divide the property between her children is shown by the devising and granting clause contained in each of the second, third, fourth, and fifth paragraphs of the will.   The first reads as follows:  "I give and bequeath to my daughter, Mary Millett, one-fourth of all the property, both real and personal, of which I may die possessed."   The second devising and granting clause in the third paragraph of the will reads:  "I give and bequeath to my son, Wilberforce W. Riley, one-fourth of all the property, both real and personal, of which I may die possessed."   The third devising and granting clause contained in the fourth paragraph reads:  "I give and bequeath to my daughter, Alice Dean, one-fourth of all the property, both real and personal, of which I may die possessed, to have and to hold for her use and benefit for her natural life and upon her death to be divided among the children of the said Alice Dean share and share alike." This gives to Alice Dean a life estate in the one-fourth of all the property, with remainder over to her heirs.   The fourth devising and granting clause contained in the fifth paragraph reads:  "I give and bequeath to my daughter, Emma L. Watson, one-fourth of all the property, both real and personal, of which I may die possessed."

After this part of this last clause comes in this fifth paragraph some peculiar provisions that do not seem to be quite consistent with other parts of the will and (if properly a part of the will) are perhaps not quite consistent with each other. They are not a part of the devising and granting clause. They come afterwards. They are that Emma L. Riley (Watson) may purchase the land if she so elects, and it is said: "The said Emma L. Riley (Watson) shall be allowed on the said purchase price of said land the sum of $12.50 per acre (which would be one-fourth of the price of each acre valued at $50 per acre) or if her bequest shall amount to more than the sum of $12.50 per acre then she shall be allowed upon the said sum of $50 per acre the sum of her entire inheritance to be deducted from said sum of $50 per acre."

The first clause of the language quoted might seem to show that Emma L. Riley (Watson) was not expected to pay anything on the one-fourth of each acre that she would inherit under the law; that the land was to be treated under the will as if she had inherited one-fourth of each acre, and was to receive one-fourth of each acre without paying anything for it; and the second clause shows that it was in the mind of the testatrix that it was uncertain what would be the amount of the bequest coming to Emma L. Riley (Watson). The words, "Or if her bequest shall amount to more than the sum of $12.50 per acre," clearly implied the uncertainty in the mind of the testatrix as to what might be the amount of the bequest. There could be no uncertainty concerning this matter if the price of the land was to be regarded as fixed at $50 per acre for the entire tract. It would be 50 times 162 or $8,100. The uncertainty was certainly there, or the writer of the will would not have given expression to it. Of course, the writer of the will must be presumed to have expressed the purpose of the testatrix, unless the contrary appears from the language of the will, the number of the devisees, the property devised, and its entire value. Could this have been the intent, first, that Emma L. Riley (Watson)

should not be obliged to pay for the one-fourth of the real estate which she would inherit under the law or take in any event under the will, if she took the land, or its value if she did not take it? Her bequest as to dollars and cents would be much greater if the land should be sold and she got one-fourth of the purchase price. This indicates that the testatrix expected the land to be sold and to get more than $12.50 per acre for her one-fourth. If the majority opinion is finally sustained, it renders absolutely nugatory the whole disjunctive clause which we have quoted. In that event, that clause in the will is without a purpose. It puts in a sentence which has no meaning, and, notwithstanding the four separate devising and granting clauses by which there is bequeathed and devised to each one of the heirs "one-fourth of all the property, both real and personal," of which the testatrix "may die possessed," yet the last child named, Emma L. Riley (Watson), is to be given 162 acres, worth $150 per acre, as set forth by the evidence, and for the price of $50 per acre only, provided the statement as made in the will is held to be equivalent to a devise. The majority opinion in that event would confer a license upon the testatrix to say one thing in the will and to mean another, and enable Mrs. Watson to enforce that which the testatrix did not say and did not intend to say.

It will be noticed that the peculiar clause in the will is not contained in the devising or granting clause. There is nothing in this clause which proposes to give the land to Emma L. Riley (Watson). She merely says in the instrument: "It is my will (my preference) that the said Emma L. Watson shall have the right to take the following described land." All that she says is that she prefers that Emma L. Watson shall have the right to take the land. But she does not devise the land to Mrs. Watson. The most that she does is to express a willingness to allow her to take the land; but, of course, at the time she executed the will she did not know whether she would take the land or not, and this part of the will is the expression

of a preference that she shall be allowed to take the land. It is merely the statement of a wish. If Mrs. Watson should prefer to take her share of the money instead of the land, there is nothing whatever in the will to prevent her from doing so. Nor should the will have greater force than the testatrix intended it to have. She did not unqualifiedly say that in any event Mrs. Watson shall have the land; but she said in effect that she might purchase it, and in that connection she said that if she did purchase it she "shall be allowed on the said purchase price of said land the sum of $12.50 per acre." Here is undoubtedly the statement indicated that the land might be sold for its reasonable market value, and, if it did sell for that, then that Mrs. Watson's interest in the land should be considered paid for up to the amount of $12.50 per acre. The fair implication is that, if the land is sold, Mrs. Watson should only have credit upon the purchase price at the rate of $12.50 per acre. The purpose was to protect Mrs. Watson and to give her the share of the land which she did inherit under the law. She did, of course, inherit one-fourth of it. But there was no purpose to say that the land should not be purchased at its fair market value. One-fourth of the land was hers under the law. It was not contemplated that this would be changed. It is difficult to understand how the land could be "purchased," unless a price was agreed upon between her and the other heirs. If I purchase a thing I agree upon the price with those who have the article to sell. That is what Mrs. Watson was expected to do. There is no meaning otherwise in the provision that she should purchase the land. There could be no "purchase price of said land," unless Mrs. Watson agreed with the other heirs concerning what the price should be. Nor is there seemingly any reason in the provision, "or if her bequest shall amount to more than the sum of $12.50 per acre then she shall be allowed upon the said sum of $50 per acre the sum of her entire inheritance to be deducted from said sum of $50 per acre." The testatrix was saying to herself: "The bequest cannot exceed

$12.50 per acre, because that is one-fourth of the value of the land now at the time of the execution of the instrument; but, if it brings more at the sale after my death, then my bequest should amount to more than the sum of $12.50 per acre." Of course, it would amount to more than $12.50 per acre if at the time of the sale it is worth $150 per acre. The scrivener did not fully express the thoughts in the mind of the testatrix. It is unreasonable to suppose that she would three times say that she intended to give each of these heirs "one-fourth of all the property, both real and personal, of which I may die possessed," unless she meant it. She intended an agreement as to the value of the property on the sale of the property. She intended to be fair with her children. The property has increased $100 an acre in value. The majority opinion would give Mrs. Watson $100 an acre on 162 acres of land. The proposition is to give her this increase in value without consideration, $16,200. To do this is to disregard the apparent intention of the testatrix as expressed in the four devising and granting clauses of the will, and is also to disregard the disjunctive clause quoted.

That part of the will contained in the fifth paragraph below the devising and granting clause is the mere expression of a wish. It is "precatory." I will say by way of illustration that it is not every condition in a will that is to be carried out; "and if such condition prove illegal or incapable of performance, whether as against good morals, or as impossible under any circumstances, or as rendered impossible in the particular case and under the existing circumstances, the gift, whether of real or personal property, relieved of the condition, becomes absolute in effect." 1 Schouler, Wills (5th ed.) sec. 599. See *Conrad v. Long,* 33 Mich. 78; *Parker v. Parker,* 123 Mass. 584; *Shepard v. Shepard,* 57 Conn. 24; *In re Greenwood,* 1 L. R. Ch. Div. 1903 (Eng.) 749. In the same section (sec. 599, *supra*) it is said: "A court of equity may, and frequently does, relieve the donee from embarrassing conditions which turn out harsh, impossible, and unconscionable."

In *Conrad v. Long, supra,* there was a devise to Frederick S. Conrad upon condition that the sister, Elizabeth Long, continued to live with her husband, Henry Long, as his wife. In case she ceased to live with her husband as his wife, then the will gave her one-half of the property devised. In an action of ejectment it was held that the condition in the will was contrary to public policy and void, and that Elizabeth Long took her share of the property clear of any conditions. In *Parker v. Parker, supra,* it was made a condition of the will that the devisee, Loring Parker, should exercise guardianship over the son of the testator, George Parker, who was an idiot. George Parker died two days before the death of the testator. He was unmarried and without issue. The testator left no widow. It was held that the devisee, Loring Parker, was relieved from the performance of the condition in the will, and that he held the land by an absolute title.

To say, "It is my will that the said Emma L. Watson shall have the right to take the following described land (describing it) for the sum of $50 per acre," she to be "allowed on the said purchase price of said land the sum of $12.50 per acre," is to use language described in the books as "precatory." It was not imperative. It was the mere expression of a wish, a preference. She would like to have it done, but did not make it a part of the devise. Where a testator wrote a codicil to his will which concluded, "I give my wife the option of adding this codicil to my will or not, as she may think proper or necessary," the court held that the option was not illegal; but, the wife having dissented, probate of the will was refused. 1 Schouler, Wills (5th ed.) sec. 293. It was said in a note to the section: "The least a court can do in such a case is to promptly decree probate of the will after the testator's death, without waiting for any later contingency to be determined, and leave its further operation to a court of construction." The testatrix did not attempt to make it imperative that Mrs. Watson take the land. In the instant case the taking effect of the codicil should be made to depend upon whether

Watson v. Riley.

the option to take the land by Mrs. Watson was (1) contained in a devising  or granting clause, and therefore was a devise or grant, and (2) was exercised by her.   It was not a devise or grant because not in such a clause; nor could it be known before the construction of the will that the heir named would elect to take the land.   (3)   A fair construction of the intent of the testatrix would require that the devisee named should purchase the land at its fair market value.   In *Coffman v. Coffman*, 85 Va. 459, 17 Am. St. Rep. 69, 2 L. R. A. 848, it was held that, where a man made a will, so called, which purported to exclude a certain son from participating in his estate at his death, yet made no disposition of the property, there was no will, and the deceased had died intestate, and that the son was entitled to his share.

"The cardinal rule of testamentary construction, * * * is that the plain intent of the testator as evinced by the language of his will must prevail, if that intent may be carried into effect without violating some deeper principle of public policy or of statute prohibition." 1 Schouler, Wills (5th ed.) sec. 466.

"Every will should be interpreted, as far as possible, from the standpoint apparently occupied by the testator and attendant circumstances, such as the condition of his family and the amount and character of his property, may and ought to be taken into consideration, as part of the *res gestæ*, where the language is not plain nor the meaning obvious." 1 Schouler, Wills  (5th ed.) sec. 466. *Smith v. Bell*, 6 Pet. (U. S.) *68; *Blake v. Hawkins*, 8 Otto (U. S.) 315; *Brown v. Bartlett*, 58 N. H. 511; *Eidt v. Eidt*, 127 N. Y. Supp. 680 (will dictated to an unskilled scrivener just before testator underwent a serious surgical operation) ; *Cornet v. Cornet*, 248 Mo. 184; *Moore's Estate*, 241 Pa. St. 253; *Will of Ehlers*, 155 Wis. 46.

"The moulding or altering must be in furtherance of the purpose expressed or indicated in the context." 1 Schouler, Wills (5th ed.) sec. 477.   *Acton v. Lloyd*, 37 N. J. Eq. 5; *Merrill v. Webster*, 187 Mass. 652.

Of course, this is saying that such changes may be made.

"If any word or expression has no intelligible meaning, or is absurd, or repugnant to the clear intent shown in the rest of the will, it may be rejected." 1 Schouler, Wills (5th ed.) sec. 478. *Bartlet v. King,* 12 Mass. 537; 1 Jarman, Wills (6th ed.) 480; *Needham v. Ide,* 5 Pick. (Mass.) 510; *Holmes v. Cradock,* 3 Ves. Jr. (Eng.) *317; *Davis v. Boggs,* 20 Ohio St. 550.

"Nor is a clear gift or devise in one part of the will to be cut down or out by indefinite, doubtful, or ambiguous expressions in another part, or upon any conjectures." 1 Schouler, Wills (5th ed.) sec. 478. 1 Jarman, Wills (6th ed.) 479; *Price v. Coles' Ex'r,* 83 Va. 343; *Meyer v. Cahen,* 111 N. Y. 270; *Hochstedler v. Hochstedler,* 108 Ind. 506; *Bruce v. Bissell,* 119 Ind. 525; *Robinson v. Finch,* 116 Mich. 180; *Pitts v. Campbell* 173 Ala. 604; *In re Randall's Will,* 137 N. Y. Supp. 319; *In re Boulevard,* 230 Pa. St. 491.

"Against the fundamental maxim that the intention of the testator shall prevail comes in conflict another primary one, namely, that the heir at law shall not be disinherited by conjecture, but only by express words or necessary implication. * * * Hence, in case of doubt a construction of the will, as to property, which conforms most clearly to the general statutes of descent and distribution should prevail." 1 Schouler, Wills (5th ed.) sec. 479. *Pendleton v. Larrabee,* 62 Conn. 393; *Geery v. Skelding,* 62 Conn. 499. The above language clearly suggests an even division of the property.

"Among one's legitimate and legitimized offspring, American policy favors the presumption that no one shall be favored above the rest, but all shall share equally in the parent's bounty, unless, of course, the will in question clearly shows a different intention." 1 Schouler, Wills (5th ed.) sec. 481. "So, too, a clause will be read so as to be consistent, if possible, with the testator's evident in-

tent and avoid uncertainty." 1 Schouler, Wills (5th ed.)
sec. 488.

Because of all the reasons which we have given, it would
seem that Mrs. Watson, the plaintiff, should not be allowed
to recover. The will was executed in February, 1906. Mrs.
Watson brought her action to quiet title in February, 1914.
The testatrix died July 9, 1913. It is alleged that the will
was admitted to probate on the 6th day of December, 1913.
In the time that elapsed between the execution of the will
and the decease of the testatrix conditions were much
changed. The value of the land was at least three times
as great as at the time of the execution of the will. It is
not equitable to give this land to Mrs. Watson at the ex-
pense of the other heirs.

In Thompson, Wills, sec. 339, it is said: "Where a testa-
tor desires his devisee or legatee to benefit some third
person out of the estate given, he frequently expresses his
desire by words of entreaty, expectation, request, recom-
mendation, hope, wish, desire, and the like, rather than by
words of command. Such expressions in wills are termed
'precatory words.'" *Burnes v. Burnes,* 137 Fed. 781;
*Kauffman v. Gries,* 141 Cal. 295; *Seymour v. Sanford,* 86
Conn. 516; *Bryan v. Milby,* 6 Del. Ch. 208, 13 L. R. A. 563;
*Hartman v. Armstrong,* 59 Kan. 696; *Murphy v. Carlin,*
113 Mo. 112, 35 Am. St. Rep. 699; *Hunt v. Hunt,* 11 Nev.
442. While in the text trusts are referred to, the language
used is "precatory," and means the same thing in its ap-
plication to wills. In the same section of Thompson, Wills,
it is said: "Where a clear discretion and choice to act, or
not, is given, equity will not construe a trust from the lan-
guage employed." *McDuffie v. Montgomery,* 128 Fed. 105;
*Giles v. Anslow,* 128 Ill. 187; *Fullenwider v. Watson,* 113
Ind. 18; *Bills v. Bills,* 80 Ia. 269, 8 L. R. A. 696, 20 Am.
St. Rep. 418; *Bowen v. Dean,* 110 Mass. 438; *Clay v.
Wood,* 153 N. Y. 134. Of devises and bequests it is said in
the same section: "Words of desire, request, recommenda-
tion, or confidence in a will, addressed by a testator to a
legatee whom he has the power to command, create no

trust in favor of the parties recommended, unless (1) the intention of the testator to make the desire, request, recommendation, or confidence imperative upon the legatee, so that he shall have no option to comply or to refuse to comply with it, clearly appears from the whole will and the relation and circumstances of the testator when it was made, (2) unless the subject-matter of the wish or recommendation is certain, and (3) unless the beneficiaries are clearly designated. When these three conditions exist, a precatory trust may be raised." *Burnes v. Burnes,* 137 Fed. 781; *Colton v. Colton,* 127 U. S. 300; *Lines v. Darden,* 5 Fla. 51; *Hunter v. Stembridge,* 12 Ga. 192; *Peake v. Jamison,* 6 Mo. App. 590. In the same section it is said: "It is well settled that the words used must be essentially imperative in their character to create a trust." *Bristol v. Austin,* 40 Conn. 438; *Hayes v. Hayes,* 242 Mo. 155; *Sturgis v. Paine,* 146 Mass. 354.

In conclusion, I desire to say that, if the purpose of the testator is to be interpreted from what she said in the four separate paragraphs of the will containing devising and granting clauses, then the action of the plaintiff should fail. If the law of descent and distribution of property is to prevail in the construction of the will, then the plaintiff should not be allowed to recover. I know of no legal or equitable reason which permits the plaintiff to obtain a judgment quieting title to the premises.